# EXHIBIT 1

Electronically Filed - Clay - May 05, 2023 - 01:19 PM

**IN THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI**
**CIVIL DIVISION**

| | | |
|---|---|---|
| ANTHONY CROW, | ) | |
| Plaintiff, | ) | Case No.: |
| v. | ) | |
| | ) | Division No.: |
| | ) | |
| ECOVYST MIDCO II, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ECOVYST CATALYST | ) | |
| TECHNOLOGIES, LLC, | ) | **REQUEST FOR JURY TRIAL** |
| | ) | |
| Defendants. | ) | |

SERVE BOTH DEFENDANTS:
Registered Agent:
Cogency Global, Inc.
9666 Olive Blvd., Ste. 690
Saint Louis, MO 63132

**<u>PETITION FOR DAMAGES</u>**

COMES NOW, Plaintiff Anthony Crow, by and through undersigned counsel, and for his

claims against Defendants Ecovyst Midco II and Ecovyst Catalyst Technologies, LLC, states as

follows:

1.　　Plaintiff is a resident of Clay County, Missouri.

2.　　Defendant Ecovyst Midco II, Inc., ("EMII") is a corporation organized under the

laws of Delaware, doing business in the State of Missouri. Defendant can be served through its

registered agent Cogency Global Inc, 9666 Olive Blvd., Ste 690, St. Louis, MO 63132.

3.　　Defendant Ecovyst Catalyst Technologies LLC ("ECT") is a limited liability

company organized under the laws of Delaware doing business in the state of Missouri.

Defendant can be served though its registered agent, Cogency Global Inc, 9666 Olive Blvd., Ste

690, St. Louis, MO 63132.

1

4. The two Defendants have common management, ownership, and financial control.

5. Each Defendant has the ability to control Plaintiff's former position, including hiring and firing, scheduling, rate of pay, maintaining work records, and providing means of accomplishing work.

6. Thus, Defendants also have common control over labor relations.

7. Defendants are in reality a single enterprise.

8. This case involves five torts:

    a. Discrimination retaliation for exercising rights granted by the workers' compensation laws of Missouri, and violation of R.S.MO. § 287.780;

    b. Wrongful discharge in violation of public policy for exercising workers' compensation rights under Kansas law;

    c. Discrimination based on disability, in violation of the Missouri Human Rights Act;

    d. Retaliation in employment, in violation of the Missouri Human Rights Act; and

    e. Failure to issue a properly requested Service Letter in violation of R.S.Mo. § 290.140.

9. Plaintiff was hired in Missouri.

10. Plaintiff worked for Defendant in Kansas City, Wyandotte County, Kansas.

11. Plaintiff suffered a work-related injury in Kansas.

12. Plaintiff invoked the workers' compensation laws of Missouri for redress of this work-related injury.

2

13.     Plaintiff's Claim for Compensation in the underlying worker's compensation case was filed and litigated in Kansas City, Jackson County, Missouri.

14.     Plaintiff was subjected to adverse employment actions while in Birmingham, Clay County, Missouri.

15.     Plaintiff experienced the adverse impact of these adverse actions in Missouri and was thereby aggrieved by the unlawful discriminatory and retaliatory practice in Missouri.

16.     These facts make jurisdiction and venue of this case proper in Clay County, Missouri and in this Court.

17.     Defendant EMII employs more than five people and is an "employer" within the meaning of the Missouri Workers' Compensation Law pursuant to § 287.030, R.S.Mo.

18.     Defendant ECT employs more than five people and is an "employer" within the meaning of the Missouri Workers' Compensation Law pursuant to § 287.030, R.S.Mo.

19.      Defendant EMII employs more than six people and is an "employer" within the meaning of the Missouri Human Rights Act pursuant to § 213.010(8), R.S.Mo.

20.     Defendant ECT employs more than six people and is an "employer" within the meaning of the Missouri Human Rights Act pursuant to § 213.010(8), R.S.Mo.

21.     Upon information and belief, Defendants employed over 500 employees in both 2021 and 2022.

### FACTS COMMON TO ALL COUNTS

22.     Plaintiff had worked under the previous name of Defendants, PQ Corporation, beginning in April 2020.

23.     On or about August 2021 the name of the company was changed to "Ecovyst."

24.     Plaintiff was employed as a maintenance and repair man.

3

25.     Plaintiff completed routine and repair-based maintenance on systems, equipment, and machinery used by Defendants in their business.

26.     Plaintiff received assignments via computer program.

27.     Plaintiff's assignments included routine scheduled maintenance and work order repairs.

28.     For both maintenance and repairs, any dangerous chemicals or substances were to be flagged and identified pursuant to the assignment.

29.     In addition to this, the operator of the machine would verify that no dangerous chemicals or substances were present—a secondary level of protection.

30.     Based on these identifications, Plaintiff knew which equipment and personal protective equipment were required to safely perform the assignment.

31.     On April 27, 2022, Plaintiff reported to work.

32.     Plaintiff was assigned a work order to replace a pipe flange at the machine to remedy a slow, dripping leak.

33.     The work order made no mention of any particular hazardous material or chemical.

34.     Upon locating the pipe flange at the machine, Plaintiff sought out the operator, Israel Guitterez.

35.     Pursuant to established protocol, Plaintiff asked Guitterez what chemical was in the line and what safety measures were needed in order to open the pipe and make a repair.

36.     Guitterez explained to Plaintiff that the machine had recently been flushed with DI water, a non-caustic and minimally dangerous substance.

37.     This information was not accurate.

4

38.     The machine actually had ethylenediamina (EDA), a highly caustic chemical which has extremely dangerous properties including:

      a.   Being highly flammable in liquid and vapor forms;

      b.   Being toxic if swallowed or inhaled;

      c.   Causing severe burns to skin;

      d.   Causing severe eye damage, including blindness from only small amounts; and

      e.   Causing breathing problems if inhaled.

39.     Guitterez explained to Plaintiff that he was not sure which valve needed to be locked out to perform maintenance on the particular area of the machine.

40.     The valve needed to be shut off regardless of the line only containing DI water.

41.     If the line was not locked out, whatever liquid was in the line would shoot all over the area as soon as Plaintiff disconnected the flange.

42.     It was imperative to find someone with knowledge of the particular valve that had to be disconnected.

43.     Both Plaintiff and Guitterez sought out and located Adam Boyer, an engineer and management member of Defendant.

44.     The three of them went back to the area for which the repair was to occur, and Boyer identified the two valves that needed to be locked out before performing the repair.

45.     Other than possibly briefly looking at the operator's screen, Boyer did not double check what chemical was in the line or even ask what chemical was in the line.

46.     At most, Boyer briefly viewed the operator's screen with Guitterez in making the determination of what was in the line.

47. Completely unaware of the fact that Guitterez had misidentified the chemical, Plaintiff locked out the identified points to begin the repair.

48. As Plaintiff loosened the leaking connection, the EDA that had accumulated in the line began to run out and over Plaintiff's right forearm.

49. The EDA immediately began burning Plaintiff's skin.

50. Plaintiff stopped the repair and radioed John Platz, Plaintiff's trainer, and asked for assistance.

51. Plaintiff immediately went to the safety shower to rinse the chemical off his skin.

52. While Plaintiff was in the shower, Patrick McNalley, McNalley's assistant, Adam Boyer, Adam Bellinger, and the safety representative arrived to check on Plaintiff.

53. The safety representative observed Plaintiff's chemical burns and she determined Plaintiff needed immediate medical treatment.

54. The safety employee immediately sent Plaintiff for authorized medical treatment.

55. Ultimately Plaintiff's right forearm was covered in second degree chemical burns from the short exposure to the EDA.

56. At the initial visit, Plaintiff was prescribed medications to treat his burns and given care instructions.

57. Plaintiff was also given a follow up appointment for Friday, April 29, 2022.

58. Around 6 AM the following day, Plaintiff contacted his supervisor, Patrick McNally.

59. Plaintiff told McNally that because his arm was missing so much skin that he wanted to take the day off.

6

60.     McNally's response was: "Really kind of need you at work today. I am sure we could find some other activities to minimize the impact on it."

61.     In response to McNally's text, Plaintiff wrote back suggesting that he could use his paid time off instead of coming to work.

62.     Shortly after the text exchange, McNally called Plaintiff.

63.     McNally again insisted that Plaintiff come to work.

64.     Plaintiff again asked why he could not just use his paid time off to convalesce.

65.     McNally repeated that he "really needed" Plaintiff to come to work.

66.     When pressed further, McNally told Plaintiff that if he stayed off work following a work-related injury it would "impact our lost time."

67.     Plaintiff reported to work as instructed.

68.     Upon arrival, Plaintiff asked McNally what to do.

69.     McNalley told Plaintiff: "Sit at your desk."

70.     Because Plaintiff had an open would on his arm, he was assigned to sit at his desk.

71.     Plaintiff sat at his desk and watched environmental impact videos.

72.     Around 2:30 PM, McNally approached Plaintiff and told him that he was being suspended pending an investigation into the accident.

73.     McNally told Plaintiff to sit at his desk for another 90 minutes and then go home.

74.     Plaintiff did as instructed and then began his suspension.

75.     The next day, Friday, April 29, Plaintiff attended his follow-up appointment and was given work restrictions including no use of his right arm.

76.     Because Plaintiff is right-handed, the restrictions imposed quite a limitation on his ability to perform his normal duties.

77.     Plaintiff emailed his restrictions to McNally.

78.     McNally did not respond to this email.

79.     Plaintiff did not hear from any representative of Defendants that day.

80.     Pursuant to its contracted agreement with the union, Defendants could only keep an employee off work for 5 days without pay while performing an investigation.

81.     However, Defendants routinely completed such investigations in much less time.

82.     On Wednesday, May 4, 2022, Plaintiff contacted McNally and asked for his work status.

83.     Plaintiff told McNally that pursuant to the union contract, an unpaid suspension could not exceed 5 days.

84.     Plaintiff was allowed to work previously and knew that Defendant could have him work if it wanted to do so.

85.     Plaintiff told McNally that the suspension was "retaliation for getting hurt."

86.     McNally never responded to the May 4 text.

87.     Around 3:00 p.m. on May 4, Plaintiff received a call from Troy Larson, the plant manager.

88.     Apparently, Larson was with both McNally and Jimmy Yeo, the Union Steward.

89.     The men referenced a conversation they had outside of Plaintiff's presence and then Larson informed Plaintiff that he was being discharged for "negligence."

90.     After the call, Plaintiff contacted Yeo.

91.     Human Resources had cautioned management against firing Plaintiff.

92.     Yeo told Plaintiff that Defendants elected to discharge Plaintiff over this advice.

93.     On or about June 1, 2022, Plaintiff duly filed a timely charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Missouri Commission on Human Rights ("MCHR"), alleging that Defendant engaged in the discriminatory actions that are being raised in this lawsuit, or alternatively, all conduct alleged herein would have arisen from the investigation of such Charge of Discrimination.

94.     A Notice of Right-to-Sue letter, dated March 7, 2023, has been issued, and this action is being brought within ninety (90) days from the issuance of such Right-to-Sue letter from the MCHR.

95.     Plaintiff has fulfilled all conditions precedent to the bringing of his claims and has duly exhausted all administrative procedures prior to instituting this lawsuit in accordance with the law.

96.     All actions or inactions of or by Defendant ECII occurred by or through its agents (including but not limited to Defendant ECT), servants, or employees, acting within the course and scope of their employment, as set forth herein.

97.     All actions or inactions of or by Defendant ECT occurred by or through its agents (including but not limited to Defendant ECII), servants, or employees, acting within the course and scope of their employment, as set forth herein.

### COUNT I - RETALIATION BASED ON THE EXERCISE OF WORKERS' COMPENSATION RIGHTS IN VIOLATION OF R.S.Mo. § 287.780 (against all Defendants)

98.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 97 of his Petition, as though fully stated herein.

99.     Plaintiff was jointly employed by Defendants.

100.    Plaintiff was injured while in the course and scope of his employment with Defendants.

101.    Plaintiff exercised rights granted by the Workers' Compensation Laws of Missouri, including, but not limited to, seeking medical care, work restrictions, convalescence, and time-off work benefits.

102.    Defendants took adverse actions against Plaintiff, including suspending Plaintiff without pay and discharging Plaintiff from employment.

103.    A/The motivating factor in these adverse actions taken by Defendants with respect to Plaintiff's employment was Plaintiff's exercise of his rights under the Workers' Compensation Laws of Missouri, including but not limited to, seeking medical care, work restrictions, convalescence, and time-off work benefits.

104.    Defendants offered justifications for these adverse actions are false and/or pretextual and/or non-existent.

105.    The actions of Defendants, including Plaintiff's discharge from employment, were acts of retaliation, in violation of 287.780 R.S.Mo which states as follows:

> No employer or agent shall discharge or discriminate against any employee for exercising any of his or her rights under this chapter when the exercising of such rights is the motivating factor in the discharge or discrimination. Any employee who has been discharged or discriminated against in such manner shall have a civil action for damages against his or her employer.

106.    The conduct of Defendants, as set for above, was done with evil motive or in reckless disregard for the rights of Plaintiff.

107.    The conduct of Defendants, as set for above, was done with evil motive or in reckless disregard for the rights of Plaintiff.

10

108.    As a direct and proximate result of Defendants' unlawful conduct, including wrongfully discharging Plaintiff from employment, Plaintiff has suffered irreparable injury, including past and future pecuniary issues, loss of employment opportunities, emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life, and will continue to suffer the same unless and until this Court grants relief.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in an amount fair, reasonable, and exceeding $75,000; for punitive damages, *if deemed appropriate by the Court at a later time*; for Plaintiff's costs and expenses occurred herein; for pre- and post-judgment interest; and for all other relief deemed just and proper by this Court.

## COUNT II - WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY UNDER KANSAS LAW
### (against all Defendants)

109.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 108 of his Petition, as though fully stated herein.

110.    Plaintiff was injured while in the course and scope of his employment with Defendants.

111.    Plaintiff exercised rights granted by the Kansas Workers' Compensation Law and Missouri Workers Compensation Law, including but not limited to reporting a work-related injury, seeking medical treatment, time-off work benefits, light duty restrictions, and time for convalescence.

112.    Defendants took adverse actions against Plaintiff, including but not limited to suspending Plaintiff and discharging Plaintiff from employment.

Electronically Filed - Clay - May 05, 2023 - 01:19 PM

113.     These adverse employment actions taken by Defendants were each based upon, and directly related to, Plaintiff's exercise of his rights under the Workers' Compensation Laws of Kansas and Missouri.

114.     Defendants' adverse employment actions violate State public policy clearly defined by the Courts and the Kansas Legislature.

115.     As a direct and proximate result of Defendants' unlawful conduct, including wrongfully discharging Plaintiff's employment, Plaintiff has suffered irreparable injury, including past and future pecuniary issues, loss of employment opportunities, emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life, and will continue to suffer the same unless and until this court grants relief.

116.     Defendants acted towards Plaintiff with willful conduct, wanton conduct, or malice.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in an amount fair, reasonable, and exceeding $75,000; for punitive damages, *if deemed appropriate by the Court at a later time*; for Plaintiff's costs and expenses occurred herein; for pre- and post-judgment interest; and for all other relief deemed just and proper by this Court.

## COUNT III - DISABILITY DISCRIMINATION IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT, R.S.Mo. § 213.010 *et seq.*
### (against all Defendants)

117.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 116 of his Petition, as though fully stated herein.

118.     Plaintiff suffered from a physical impairment.

119.     This physical impairment substantially limited Plaintiff's major life activities, including the ability to lift, type, write, grip, hold, and maintain employment.

12

120. This physical impairment constituted a physiological condition, cosmetic disfigurement, and anatomical loss of skin, which impacted the operation of major bodily systems.

121. This physical impairment was not minor.

122. Additionally, Defendants regarded Plaintiff's impairments as substantially limiting additional major life activities and for much longer periods of time than they actually would have.

123. In reality, Plaintiff could at all times perform the essential job functions of his position with or without reasonable accommodations.

124. Therefore, Plaintiff had a "disability" under Section 213.010(5).

125. Defendants took adverse actions against Plaintiff, including but not limited to, refusing Plaintiff the use of a reasonable accommodation, suspending Plaintiff, falsely accusing Plaintiff of violating employment policies, and discharging him from employment.

126. A/The motivating factor in these adverse actions were Plaintiff's disabilities, including disability wrongfully attributed to Plaintiff by Defendants.

127. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

128. The conduct of Defendants, as set forth above, was intentionally harmful to the Plaintiff and done without just cause.

129. Additionally, the conduct of Defendants, as set forth above, was done with evil motive.

13

130.    Plaintiff is also entitled to recover all of his costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in an amount exceeding $75,000; for punitive damages, *if deemed appropriate by the Court at a later time*; for Plaintiff's costs and expenses incurred herein; for attorneys' fees; and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT IV- RETALIATION IN VIOLATION OF
### THE MISSOURI HUMAN RIGHTS ACT, R.S.Mo. § 213.010 *et seq.*
**(against all Defendants)**

131.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 130 of his Petition, as though fully stated herein.

132.    Plaintiff engaged in activity protected by the MHRA, particularly opposing a practice which is prohibited by the Act.

133.    Plaintiff opposed this disability discrimination by making a complaint about his discriminatory suspension to his direct supervisor.

134.     Defendants took adverse actions against Plaintiff, including discharging Plaintiff from employment.

135.    Plaintiff engaging in this protected activity was a/the motivating factor in these adverse actions.

136.    Thus, these were acts of retaliation.

137.    The conduct of Defendants was outrageous and evidenced an evil motive or reckless indifference for the rights of Plaintiff.

14

138.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary issues, loss of employment opportunities, emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life, and will continue to suffer the same unless and until this Court grants relief.

139.     Plaintiff is also entitled to recover all his costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendants for compensatory damages in an amount exceeding $75,000; for punitive damages, *if deemed appropriate by the Court at a later date*; for Plaintiff's costs and expenses incurred herein; for attorneys' fees; and for all other relief deemed just and proper by this Court.

## COUNT V- FAILURE TO PROVIDE REQUESTED SERVICE LETTER IN VIOLATION OF R.S.Mo § 290.140
### (against Defendant EMII)

140.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 139 of his Petition, as though fully stated herein.

141.     Plaintiff worked for Defendant EMII for more than 90 days.

142.     Plaintiff sent a Request for Service Letter to Defendant EMII's registered agent on May 9, 2022.

143.     This Request made specific reference to R.S.Mo. § 290.140.

144.     The Request was received by Defendant EMII on May 13, 2022.

145.     Over 45 days passed from the time Defendant EMII received the Request.

146.     Defendant EMII has failed to provide the properly requested Service Letter.

15

147.     Defendant EMII's failure to respond to Plaintiff's Request for Service Letter, despite having received the Request and being informed of the specific statute being invoked, constitutes actual and legal malice by Defendant EMII.

WHEREFORE, Plaintiff prays for judgment against Defendant EMII for compensatory damages in an amount fair and reasonable; for punitive damages, *if deemed appropriate by the Court at a later date*; for Plaintiff's costs and expenses incurred herein; and for all other relief deemed just and proper by this Court.

**COUNT VI - RETALIATION BASED ON THE EXERCISE OF WORKERS'
COMPENSATION RIGHTS IN VIOLATION OF R.S.Mo. § 287.780
(against Defendant EMII and in the alternative to Counts I-IV, X-XIII)**

148.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 147 of his Petition, as though fully stated herein.

149.     Plaintiff was an employee of Defendant EMII.

150.     Plaintiff was injured while in the course and scope of his employment with Defendant EMII.

151.     Plaintiff exercised rights granted by the Workers' Compensation Laws of Missouri, including, but not limited to, seeking medical care, work restrictions, convalescence, and time-off work benefits.

152.     Defendant EMII took adverse actions against Plaintiff, including suspending Plaintiff without pay and discharging Plaintiff from employment.

153.     A/The motivating factor in these adverse actions taken by Defendant EMII with respect to Plaintiff's employment was Plaintiff's exercise of his rights under the Workers' Compensation Laws of Missouri, including but not limited to, seeking medical care, work restrictions, convalescence, and time-off work benefits.

154.     Defendant EMII's offered justifications for these adverse actions are false and/or pretextual and/or non-existent.

155.     The actions of Defendant EMII, including Plaintiff's discharge from employment, were acts of retaliation, in violation of 287.780 R.S.Mo which states as follows:

> No employer or agent shall discharge or discriminate against any employee for exercising any of his or her rights under this chapter when the exercising of such rights is the motivating factor in the discharge or discrimination. Any employee who has been discharged or discriminated against in such manner shall have a civil action for damages against his or her employer.

156.     The conduct of Defendant EMII, as set for above, was done with evil motive or in reckless disregard for the rights of Plaintiff.

157.     The conduct of Defendant EMII, as set for above, was done with evil motive or in reckless disregard for the rights of Plaintiff.

158.     As a direct and proximate result of Defendant EMII's unlawful conduct, including wrongfully discharging Plaintiff from employment, Plaintiff has suffered irreparable injury, including past and future pecuniary issues, loss of employment opportunities, emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life, and will continue to suffer the same unless and until this Court grants relief.

WHEREFORE, Plaintiff prays for judgment against Defendant EMII for compensatory damages in an amount fair, reasonable, and exceeding $75,000; for punitive damages, *if deemed appropriate by the Court at a later time*; for Plaintiff's costs and expenses occurred herein; for pre- and post-judgment interest; and for all other relief deemed just and proper by this Court.

**COUNT VII - WRONGFUL DISCHARGE IN VIOLATION OF
PUBLIC POLICY UNDER KANSAS LAW**
**(against Defendant EMII and in the alternative to Counts I-IV, X-XIII)**

159.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 158 of his Petition, as though fully stated herein.

160.    Plaintiff was injured while in the course and scope of his employment with Defendant EMII.

161.    Plaintiff exercised rights granted by the Kansas Workers' Compensation Law and Missouri Workers Compensation Law, including but not limited to reporting a work-related injury, seeking medical treatment, time-off work benefits, light duty restrictions, and time for convalescence.

162.    Defendant EMII took adverse actions against Plaintiff, including but not limited to suspending Plaintiff and discharging Plaintiff from employment.

163.    These adverse employment actions taken by Defendant EMII were each based upon, and directly related to, Plaintiff's exercise of his rights under the Workers' Compensation Laws of Kansas and Missouri.

164.    Defendant EMII's adverse employment actions violate State public policy clearly defined by the Courts and the Kansas Legislature.

165.    As a direct and proximate result of Defendant EMII's unlawful conduct, including wrongfully discharging Plaintiff's employment, Plaintiff has suffered irreparable injury, including past and future pecuniary issues, loss of employment opportunities, emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life, and will continue to suffer the same unless and until this court grants relief.

18

166.     Defendant EMII acted towards Plaintiff with willful conduct, wanton conduct, or malice.

WHEREFORE, Plaintiff prays for judgment against Defendant EMII for compensatory damages in an amount fair, reasonable, and exceeding $75,000; for punitive damages, *if deemed appropriate by the Court at a later time*; for Plaintiff's costs and expenses occurred herein; for pre- and post-judgment interest; and for all other relief deemed just and proper by this Court.

<u>**COUNT VIII - DISABILITY DISCRIMINATION IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT, R.S.Mo. § 213.010 *et seq.***</u>
**(against Defendant EMII and in the alternative to Counts I-IV, X-XIII)**

167.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 166 of his Petition, as though fully stated herein.

168.      Plaintiff suffered from a physical impairment.

169.     This physical impairment substantially limited Plaintiff's major life activities, including the ability to lift, type, write, grip, hold, and maintain employment.

170.     This physical impairment constituted a physiological condition, cosmetic disfigurement, and anatomical loss of skin, which impacted the operation of major bodily systems.

171.     This physical impairment was not minor.

172.     Additionally, Defendant EMII regarded Plaintiff's impairments as substantially limiting additional major life activities and for much longer periods of time than they actually would have.

173.     In reality, Plaintiff could at all times perform the essential job functions of his position with or without reasonable accommodations.

174.     Therefore, Plaintiff had a "disability" under Section 213.010(5).

19

175. Defendant EMII took adverse actions against Plaintiff, including but not limited to, refusing Plaintiff the use of a reasonable accommodation, suspending Plaintiff, falsely accusing Plaintiff of violating employment policies, and discharging him from employment.

176. A/The motivating factor in these adverse actions were Plaintiff's disabilities, including disability wrongfully attributed to Plaintiff by Defendant EMII.

177. As a direct and proximate result of Defendant EMII's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

178. The conduct of Defendant EMII, as set forth above, was intentionally harmful to the Plaintiff and done without just cause.

179. Additionally, the conduct of Defendant EMII, as set forth above, was done with evil motive.

180. Plaintiff is also entitled to recover all of his costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant EMII for compensatory damages in an amount exceeding $75,000; for punitive damages, *if deemed appropriate by the Court at a later time*; for Plaintiff's costs and expenses incurred herein; for attorneys' fees; and for such other and further consideration and relief as the Court may deem just and equitable.

**COUNT IX- RETALIATION IN VIOLATION OF**
**THE MISSOURI HUMAN RIGHTS ACT, R.S.Mo. § 213.010 *et seq.***
**(against Defendant EMII and in the alternative to Counts I-IV, X-XIII)**

181.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 180 of his Petition, as though fully stated herein.

182.    Plaintiff engaged in activity protected by the MHRA, particularly opposing a practice which is prohibited by the Act.

183.    Plaintiff opposed this disability discrimination by making a complaint about his discriminatory suspension to his direct supervisor.

184.     Defendant EMII took adverse actions against Plaintiff, including discharging Plaintiff from employment.

185.    Plaintiff engaging in this protected activity was a/the motivating factor in these adverse actions.

186.    Thus, these were acts of retaliation.

187.    The conduct of Defendant EMII was outrageous and evidenced an evil motive or reckless indifference for the rights of Plaintiff.

188.    As a direct and proximate result of Defendant EMII's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary issues, loss of employment opportunities, emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life, and will continue to suffer the same unless and until this Court grants relief.

189.    Plaintiff is also entitled to recover all his costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant EMII for compensatory damages in an amount exceeding $75,000; for punitive damages, *if deemed appropriate by the*

*Court at a later date*; for Plaintiff's costs and expenses incurred herein; for attorneys' fees; and for all other relief deemed just and proper by this Court.

### COUNT X - RETALIATION BASED ON THE EXERCISE OF WORKERS' COMPENSATION RIGHTS IN VIOLATION OF R.S.Mo. § 287.780 (against Defendant ECT and in the alternative to Counts I-IX)

190.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 189 of his Petition, as though fully stated herein.

191.    Plaintiff was an employee of Defendant ECT.

192.    Plaintiff was injured while in the course and scope of his employment with Defendant ECT.

193.    Plaintiff exercised rights granted by the Workers' Compensation Laws of Missouri, including, but not limited to, seeking medical care, work restrictions, convalescence, and time-off work benefits.

194.    Defendant ECT took adverse actions against Plaintiff, including suspending Plaintiff without pay and discharging Plaintiff from employment.

195.    A/The motivating factor in these adverse actions taken by Defendant ECT with respect to Plaintiff's employment was Plaintiff's exercise of his rights under the Workers' Compensation Laws of Missouri, including but not limited to, seeking medical care, work restrictions, convalescence, and time-off work benefits.

196.    Defendant ECT's offered justifications for these adverse actions are false and/or pretextual and/or non-existent.

197.    The actions of Defendant ECT, including Plaintiff's discharge from employment, were acts of retaliation, in violation of 287.780 R.S.Mo which states as follows:

> No employer or agent shall discharge or discriminate against any employee for exercising any of his or her rights under this chapter when the exercising of such

rights is the motivating factor in the discharge or discrimination. Any employee who has been discharged or discriminated against in such manner shall have a civil action for damages against his or her employer.

198.     The conduct of Defendant ECT, as set for above, was done with evil motive or in reckless disregard for the rights of Plaintiff.

199.     The conduct of Defendant ECT, as set for above, was done with evil motive or in reckless disregard for the rights of Plaintiff.

200.     As a direct and proximate result of Defendant ECT's unlawful conduct, including wrongfully discharging Plaintiff from employment, Plaintiff has suffered irreparable injury, including past and future pecuniary issues, loss of employment opportunities, emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life, and will continue to suffer the same unless and until this Court grants relief.

WHEREFORE, Plaintiff prays for judgment against Defendant ECT for compensatory damages in an amount fair, reasonable, and exceeding $75,000; for punitive damages, *if deemed appropriate by the Court at a later time*; for Plaintiff's costs and expenses occurred herein; for pre- and post-judgment interest; and for all other relief deemed just and proper by this Court.

<u>**COUNT XI - WRONGFUL DISCHARGE IN VIOLATION OF**</u>
<u>**PUBLIC POLICY UNDER KANSAS LAW**</u>
**(against Defendant ECT and in the alternative to Counts I-IX)**

201.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 198 of his Petition, as though fully stated herein.

202.     Plaintiff was injured while in the course and scope of his employment with Defendant ECT.

203.     Plaintiff exercised rights granted by the Kansas Workers' Compensation Law and Missouri Workers Compensation Law, including but not limited to reporting a work-related

23

injury, seeking medical treatment, time-off work benefits, light duty restrictions, and time for convalescence.

204.    Defendant ECT took adverse actions against Plaintiff, including but not limited to suspending Plaintiff and discharging Plaintiff from employment.

205.    These adverse employment actions taken by Defendant ECT were each based upon, and directly related to, Plaintiff's exercise of his rights under the Workers' Compensation Laws of Kansas and Missouri.

206.    Defendant ECT's adverse employment actions violate State public policy clearly defined by the Courts and the Kansas Legislature.

207.    As a direct and proximate result of Defendant ECT's unlawful conduct, including wrongfully discharging Plaintiff's employment, Plaintiff has suffered irreparable injury, including past and future pecuniary issues, loss of employment opportunities, emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life, and will continue to suffer the same unless and until this court grants relief.

208.    Defendant ECT acted towards Plaintiff with willful conduct, wanton conduct, or malice.

WHEREFORE, Plaintiff prays for judgment against Defendant ECT for compensatory damages in an amount fair, reasonable, and exceeding $75,000; for punitive damages, *if deemed appropriate by the Court at a later time*; for Plaintiff's costs and expenses occurred herein; for pre- and post-judgment interest; and for all other relief deemed just and proper by this Court.

### COUNT XII - DISABILITY DISCRIMINATION IN VIOLATION OF
### THE MISSOURI HUMAN RIGHTS ACT, R.S.Mo. § 213.010 *et seq.*
**(against Defendant ECT and in the alternative to Counts I-IX)**

209.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 208 of his Petition, as though fully stated herein.

210.    Plaintiff suffered from a physical impairment.

211.    This physical impairment substantially limited Plaintiff's major life activities, including the ability to lift, type, write, grip, hold, and maintain employment.

212.    This physical impairment constituted a physiological condition, cosmetic disfigurement, and anatomical loss of skin, which impacted the operation of major bodily systems.

213.    This physical impairment was not minor.

214.    Additionally, Defendant ECT regarded Plaintiff's impairments as substantially limiting additional major life activities and for much longer periods of time than they actually would have.

215.    In reality, Plaintiff could at all times perform the essential job functions of his position with or without reasonable accommodations.

216.    Therefore, Plaintiff had a "disability" under Section 213.010(5).

217.    Defendant ECT took adverse actions against Plaintiff, including but not limited to, refusing Plaintiff the use of a reasonable accommodation, suspending Plaintiff, falsely accusing Plaintiff of violating employment policies, and discharging him from employment.

218.    A/The motivating factor in these adverse actions were Plaintiff's disabilities, including disability wrongfully attributed to Plaintiff by Defendant ECT.

219.    As a direct and proximate result of Defendant ECT's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

220.    The conduct of Defendant ECT, as set forth above, was intentionally harmful to the Plaintiff and done without just cause.

221.    Additionally, the conduct of Defendant ECT, as set forth above, was done with evil motive.

222.    Plaintiff is also entitled to recover all of his costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant ECT for compensatory damages in an amount exceeding $75,000; for punitive damages, *if deemed appropriate by the Court at a later time*; for Plaintiff's costs and expenses incurred herein; for attorneys' fees; and for such other and further consideration and relief as the Court may deem just and equitable.

### COUNT XIII- RETALIATION IN VIOLATION OF
### THE MISSOURI HUMAN RIGHTS ACT, R.S.Mo. § 213.010 *et seq.*
### (against Defendant ECT and in the alternative to Counts I-IV, X-XIV)

223.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 222 of his Petition, as though fully stated herein.

224.    Plaintiff engaged in activity protected by the MHRA, particularly opposing a practice which is prohibited by the Act.

225.    Plaintiff opposed this disability discrimination by making a complaint about his discriminatory suspension to his direct supervisor.

226.     Defendant ECT took adverse actions against Plaintiff, including discharging Plaintiff from employment.

227.     Plaintiff engaging in this protected activity was a/the motivating factor in these adverse actions.

228.     Thus, these were acts of retaliation.

229.     The conduct of Defendant ECT was outrageous and evidenced an evil motive or reckless indifference for the rights of Plaintiff.

230.     As a direct and proximate result of Defendant ECT's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary issues, loss of employment opportunities, emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life, and will continue to suffer the same unless and until this Court grants relief.

231.     Plaintiff is also entitled to recover all his costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant ECT for compensatory damages in an amount exceeding $75,000; for punitive damages, *if deemed appropriate by the Court at a later date*; for Plaintiff's costs and expenses incurred herein; for attorneys' fees; and for all other relief deemed just and proper by this Court.

Respectfully submitted,

 /s/ Daniel L. Doyle
Daniel L. Doyle, MO Bar No. 37305
Robert A. Bruce, MO Bar No. 69985
DOYLE & BRUCE LLC
748 Ann Avenue
Kansas City, Kansas  66101
Telephone:  (913) 543-8558
Facsimile:  (913) 543-3888
Dan@KCLaw.com
Robert@KCLaw.com
**ATTORNEYS FOR PLAINTIFF**